UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JOHN KIM,

        Plaintiff,

    -against-                                    08 Civ. 7915 (CM)

COLUMBIA UNIVERSITY,

        Defendant.

------------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/16/09
```

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE MOTION FOR SUMMARY JUDGMENT DISMISSING COMPLAINT

McMahon, J.:

        Defendant Columbia University has moved to dismiss the complaint in this action, or in the alternative for summary judgment dismissing the complaint. The plaintiff, who appears pro se but who is an experienced litigant, has filed opposition papers including a Local Rule 56.1 statement, indicating that he is not opposed to the court's treating the motion as a motion for summary judgment. I thus treat the motion as a motion for summary judgment.

        The record on the motion includes the papers filed by the parties and the transcripts of the conferences/arguments that were held on February 20, 2009; April 2, 2009; and May 1, 2009.

        At our first conference, on February 20, 2009, the court advised plaintiff that it would grant Columbia's motion insofar as the university sought dismissal of claims brought in this action that duplicate claims in a previously-filed action that is (or was) pending before The Hon. Robert Patterson of this court. Curtis v. Citibank, N.A., 226 F. 3d 133, 138-39 (2d Cir. 2000). This means that Mr. Kim's claims of employment discrimination, which arise out of his employment at Columbia (which, I gather, ended in April 1992), are dismissed from this action. The dismissal is without prejudice to whatever Judge Patterson may do with them; they appear to be long time-barred, but perhaps they were in administrative limbo for a very long time.

        The principal remaining claim in this action is a claim by Mr. Kim for $2,734 that was in one of his two retirement accounts: The Retirement Plan for Support Staff.[1] Columbia contended

---

[1] Mr. Kim was originally employed, beginning in October 1987, as a Local area network Coordinator at Columbia Business School's Information Technology and Computing Center. While so employed, he was covered by the retirement plan at issue in this case (the Support Staff

that the funds in this account were unvested, allegedly because Kim did not meet the requirement for vesting, which is five years of service with the University (it appears that Mr. Kim worked for Columbia for just over four and one half years) . Columbia took back the funds in this account in 2007.

It is undisputed that Columbia did not just take the money from Mr. Kim's Support Staff Plan account; it took the same action in connection with some 2000 other accounts, after an outside audit revealed that the beneficiaries of these account were not vested in the benefits therein. Columbia's motion to dismiss Mr. Kim's claim that Columbia wrongfully reclaimed the money in this account was predicated on what it deemed was the undisputed fact that the benefits had not vested.

In opposing the motion, Mr. Kim produced (at one of the conferences) paperwork from TIAA-CREF, which indicated that he was vested in his Support Staff Plan retirement account. This created a genuine issue of fact on the question of vesting, one that would appear to require denial of Columbia's motion to dismiss this aspect of the case.

However, in both its original brief and in a supplemental memorandum, Columbia argues that any claim for benefits under the Support Staff Plan is barred for failure to exhaust administrative remedies. In the Supplemental Memorandum, Columbia specifically argues that any purported disputed issue of fact over vesting is irrelevant because of the failure to exhaust administrative remedies.

The first question is: what administrative remedies is Columbia is claiming that Mr. Kim is required to exhaust.

Columbia notified Mr. Kim that he was not vested in the benefits by letter dated May 30, 2007:

> Please know that we recently completed a review of our records
> and determined that you did not complete five years when you left
> the University. Accordingly, the retirement benefit under the Columbia
> University Retirement Annuity Plan is not available to you.
>
> Please feel free to contact us if you have any official documentation
> showing you worked longer than five years and we will be pleased to
> review your employment history at Columbia University.

According to Columbia, this letter does not constitute a "denial of benefits," within the meaning

---

Plan). Kim was promoted to the position of Network Coordinator in June 1988; at that point he became a participant in Columbia's Retirement Plan for Officers, and contributions on his behalf to the Support Staff Plan ceased. This explains the modest amount of benefits at issue. The court is advised that Mr. Kim could collect his benefits under the Officers Plan (which contains about $12,000), but he has chosen not to withdraw the funds.

of the Plan. The Plan Document for the Support Staff Plan, as amended and restated effective May 1, 1986, sets forth procedures for claiming benefits and contesting denials of benefits. Per Section 8.4 of the Plan, any claim for benefits under a covered retirement plan must be filed in writing with the Plan Administrator (who is Columbia's Vice President for Personnel Management, see Plan, Section 8.1). Any such claim must be responded to in writing.

There is no evidence in the record that Mr. Kim ever sent the Plan Administrator a written claim for benefits within the meaning of Section 8.4 of the Plan, or that the Plan Administrator issued any written "denial" of such a claim. I agree with Columbia that the May 30, 2007 letter is not a Section 8.4 "denial of benefits" under the Plan.[2]

Rather, I believe Columbia's argument to be that Mr. Kim failed to exhaust his administrative remedies because he did not contact the Human Resources Benefits Department to dispute its conclusion that his interest in the Support Staff Retirement Plan account had never vested. Noting that the Second Circuit has recognized "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases," Alfarone v. Vernie Wolff Construction Corp., 788 F. 2d 76, 79 (2d Cir. 1986), Columbia argues that Kim was required to bring his claim to the university before bringing suit. Columbia points out that approximately 100 others in plaintiff's position did contest Columbia's determination that they were not vested and asserted that their accounts should not be forfeited.

While it would have been prudent for Mr. Kim to try to clear this up with Columbia first, I disagree that his failure to do so bars him from court.

Plaintiff's allegation here is that Columbia wrongfully withdrew funds from a retirement account in which he had a vested interest. The remedy he seeks is the restoration of funds to that account – not the payment of benefits to him. As far as I can tell, no administrative remedy set forth in the plan document covers this situation, so there was no administrative remedy for him to exhaust.

The plan document constitutes the contract between the plan beneficiaries and Columbia, setting forth the terms and conditions under which a Columbia employee may participate in the plan's benefits. Among those provisions are certain procedures that must be followed in certain circumstances (including specifically when benefits are denied). Plan participants must exhaust administrative remedies before suing because the plan document (which sets forth the terms of the "contract" between the institution and its employees) says so. But here, the administrative remedy set forth in the plan document (the only administrative remedy to which Columbia points) applies solely and exclusively to denials of benefits. A plan beneficiary has no obligation to follow those procedures when Columbia takes an action that does not constitute a denial of benefits – and Columbia admits that its May 30, 2007 letter is NOT a denial of benefits.

---

[2] For this reason, it was not incumbent on Mr. Kim, as a prelude to bringing this lawsuit, that he follow the procedure for appealing a denial of benefits, as set forth in Section 8.5 of the Plan.

Columbia seems to be arguing that Kim was required to accept its invitation to contact the HR Benefits Department and dispute its determination that he was not vested in the Support Staff plan account before he could sue. But Columbia points to no provision in the plan documents that imposes such an obligation on Kim, and the court has been unable to locate one. The administrative remedies that must be exhausted under ERISA are those that are part of the Plan, as set forth in the Plan documents. The invitation in the May 30, 2007 letter is not a remedy set forth in the Plan document. It is nothing more than an *ad hoc* procedure invented by Columbia (well after the Plan was last amended) to deal with whatever complaints might be received when former employees learned that the university was taking back money in retirement account that the employees thought belonged to them. It is highly significant that Columbia did not advise Kim and the other recipients of the May 30, 2007 letter to follow the procedures set forth in Sections 8.4 and 8.5 of the Amended and Restated Plan if they disagreed with the determination that they were not vested in their retirement accounts.

Nothing in the Plan documents required Kim to accept Columbia's suggestion – and it was no more than that – that he contact HR Benefits if he disagreed with its determination that he had not worked at the university long enough to vest in his account with the Support Staff plan. Therefore, plaintiff's failure or refusal to do so does not constitute a failure to exhaust administrative remedies as contemplated by ERISA and cases like Alfarone.

Columbia's motion for summary judgment on the claim for restoration of the account balance in Kim's Support Staff Plan account is, therefore, denied.

Mr. Kim has also asserted a claim for retaliation in connection with Columbia's decision to remove the money from his Support Staff Account. He contends that Columbia retaliated against him when it reclaimed the money in his retirement account, as well as his claim for punitive damages.

Columbia is, however, entitled to summary judgment dismissing those claims.

Mr. Kim alleges that Columbia's decision to take back his pension money was made in retaliation for his bringing the employment discrimination lawsuit that is pending before Judge Patterson. The undisputed evidence compels the conclusion that it was not.

The undisputed evidence in the record indicates that Mr. Kim was not singled out for any special treatment in connection with his retirement account. Mr. Kim was not singled out for special treatment in connection with his Support Staff Plan account. The evidence demonstrates that Columbia hired a reputable outside firm to conduct an audit of its pension plans. The auditor identified the accounts of every individual who had an open account but who had worked at the university for fewer than five years. Columbia then contacted all of those individuals (over 2000 persons) and advised them that they were not entitled to the funds in their pension accounts. Columbia recaptured the money from all of those accounts, not just from Mr. Kim's.

The basis on which Mr. Kim claims retaliation is temporal proximity, in that he commenced his employment discrimination lawsuit some eleven months before he was notified

that he was not vested in his Support Staff account. However, on the evidence in the record, the only conclusion that a *reasonable* trier of fact could reach is that this is simply a coincidence (an unfortunate one, from Columbia's perspective). There is no basis to conclude that anyone involved with the forfeiture of Mr. Kim's Support Staff pension account was aware that plaintiff had a pending lawsuit against Columbia when the HR Benefits Department commenced the audit or when it acted on the outside auditor's findings. There is certainly no evidence that the outside auditor was aware of Mr. Kim's lawsuit when it identified his account as one that had not vested. And it is implausible to the point of impossibility to suggest that Columbia instituted an audit of all its pension plans, and incurred the significant financial and administrative costs associated therewith, in order to find a way to retaliate against Mr. Kim for filing a discrimination complaint in federal court.

Therefore, Columbia's motion for summary judgment dismissing Mr. Kim's retaliation claim is granted.

Because there is not the slightest evidence of retaliation, there is also no basis for an award of punitive damages in this case. I take this opportunity to put in writing what I said to Mr. Kim at one of our conferences: If Columbia's records concerning Mr. Kim are wrong and TIAA-CREF's are correct (which is to say, if Mr. Kim worked at Columbia for five or more years), then of course the university should not have recaptured the money and will have to put it back. But under no reasonable view of the facts can it be said that Columbia did anything that so shocks the conscience as to require, or even permit, an award of punitive damages against it. The court will not charge the jury on punitive damages.

This leaves for trial Mr. Kim's claim that Columbia was wrong when it concluded that he had not vested in the benefits in his Support Staff account. If the trier of fact concludes at trial that Mr. Kim was not vested in the plan, considering only the terms of the plan itself, then the verdict will have to be for Columbia on this claim, notwithstanding the contents of the TIAA-CREF document.[3]

The parties are on 48 hours notice for trial.

This constitutes the decision and order of the court.

---

[3] In attempting to compromise this lawsuit, Columbia figured out a way to "recalculate" Mr. Kim's "seniority" in order to give him five years of service and offered to reopen his account and restore the forfeited money. Mr. Kim was not interested in this resolution, because it did not come with an apology; he also did not want to give up his retaliation claim or his opportunity to obtain punitive damages, and he refused to sign a stipulation of settlement. See Transcript of the May 1, 2009 conference. Mr. Kim's retaliation claim and his claim for punitive damages have now been officially and formally dismissed, so he may wish to reconsider Columbia's offer. I am advising the parties that the court will not permit the jury to hear any testimony about the settlement negotiations. Columbia will have every right to revert to its original position that Mr. Kim was not vested under the terms of the plan because he had not worked for the university for five years. This means that plaintiff may end up with nothing at all if he goes to trial.

Dated: September 16, 2009

_____
U.S.D.J.

BY FIRST CLASS MAIL TO ALL PARTIES